IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>BROOK ALLEN WALTON,<br><br>    Defendant. | Case No. CR07-0014<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V. SEARCH WARRANT APPLICATION . . . . . . . . . . . . . . . . . . . . . 6

VI. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   A. *False statements and omitted information.* . . . . . . . . . . . . . . . . 9
   B. *Probable Cause.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VII. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII. RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION

On the 22nd day of June, 2007, this matter came on for hearing on the Motion to Suppress Evidence (docket number 16) filed by the Defendant on May 30, 2007. The Government was represented by Assistant United States Attorney Patrick Reinert. Defendant Brook Walton appeared personally and was represented by his attorney, Wallace Taylor. The hearing could not be completed during the time allocated on June 22, 2007 and, therefore, was completed on June 29, 2007.[1] The parties were given until July 6, 2007, to file additional briefs.

## II. PROCEDURAL HISTORY

On March 7, 2007, Defendant Brook Walton was charged by Indictment (docket number 2) in two counts: Count 1 charges Defendant with possession of cocaine with intent to distribute within 1,000 feet of a school; and Count 2 charges Defendant with possession of cocaine. Defendant entered a plea of not guilty and trial was scheduled for July 2, 2007. Due to the pendency of the instant Motion to Suppress Evidence, however, the trial was continued and is now scheduled on August 27, 2007. (*See* docket number 35.)

## III. ISSUE PRESENTED

On July 1, 2005, Sgt. Harvey Hall of the Linn County Sheriff's Office submitted an Application for Search Warrant to a Linn County magistrate, supported by an Affidavit identified as "Attachment A," and a form referring to an informant, identified as "Attachment B." (*See* Government's Exhibit 1.) The Application and Affidavit bear the signature of Sgt. Harvey Hall and indicate that they were sworn to before the magistrate on July 1, 2005. The form referring to the informant ("Attachment B") is unsigned.[2] In

---

[1] Also appearing on behalf of the Government on June 29 was Assistant United States Attorney Daniel Tvedt.

[2] The Court notes parenthetically that Government's Exhibit 1 suggests that Attachment B consists of two pages, with the second page including a short narrative and a space for the affiant's signature. In
(continued...)

2

paragraph 1 of the Endorsement on Search Warrant Application, the issuing magistrate indicated that the Court was relying on the "affidavit only." In paragraph 2, however, the magistrate also indicated reliance on information supplied by a confidential informant, with the informant's information appearing credible because "[s]worn testimony indicates this informant has given reliable information on previous occasions." (*See* Government's Exhibit 1.) Defendant claims that the assertions made by Sgt. Hall in support of the Application contain deliberate falsehoods or were made in reckless disregard for the truth.

## *IV. RELEVANT FACTS*

On June 20, 2005, Trooper Michael McVey of the Iowa State Patrol was contacted by Desiree Walker regarding information which she possessed about Defendant Brook Walton.[3] According to Trooper McVey, he had never talked to Walker prior to that date and he did not know why she had contacted him. When Trooper McVey discovered the nature of the information, he asked Special Agent Greg Brugman of the Iowa Department of Narcotics Enforcement ("DNE") to sit in on the interview.

According to Trooper McVey, Desiree Walker told the officers that a large quantity of cocaine, jewelry, and money could be found in a safe in Defendant's home. Walker also disclosed that she had been assaulted by Defendant's girlfriend, Jenica Mullarkey. Walker told Trooper McVey that Defendant was present when Mullarkey assaulted her, but did not disclose that Defendant had previously assaulted her.[4] Trooper McVey checked

---

[2](...continued)
the Government's Resistance to the Motion to Suppress filed on June 11, 2007, however, the second page of Attachment B was omitted. (*See* docket number 23.)

[3]At the time of hearing, McVey testified that he is now a special agent with the Iowa Division of Criminal Investigation.

[4]In his post-hearing brief (docket number 47), Defendant argues that notwithstanding his testimony at the hearing, Trooper McVey must have known of Defendant's assault on Walker, citing a police report filed on May 24, 2006, nearly one year later. Initially, the Court notes that the police report (attached to Defendant's Motion to Suppress Evidence and identified as Defendant's Exhibit A) was not offered into evidence at the time of hearing. Apparently, the report (docket number 16-3) was made belatedly so
(continued...)

3

to verify Defendant's address, car registration, and whether he was on probation, but did not do any additional investigation. Trooper McVey advised Walker to file a report regarding the assault with the Cedar Rapids Police Department, which McVey testified Walker did the following day.[5]

Special Agent Greg Brugman confirmed that he met with Trooper McVey and Desiree Walker.[6] Special Agent Brugman testified that Walker, who identified herself as Defendant's former girlfriend, told the officers that she was assaulted by Jenica Mullarkey, whom she identified as Defendant's current girlfriend. Special Agent Brugman could not recall any statements by Walker that she had been assaulted by Defendant.[7]

Special Agent Brugman testified that during this same period of time, he was working with a confidential informant by the name of Heather Faeth. According to Special Agent Brugman, Faeth made two controlled buys for him and he asked her to make a controlled buy from Defendant Brook Walton. On June 30, 2005, Special Agent Brugman received a telephone call from Sgt. Harvey Hall of the Linn County Sheriff's office,

---

[4](...continued)
Walker could submit her medical bills for reimbursement by a victims' compensation fund. She apparently also advised the officer on May 25, 2006, that she delayed filing a report because Trooper McVey and "a DEA agent" advised her that "they wanted her to wait in filing the report due to parole violations they were working on for Walton." Defendant also notes in his Brief that in its Resistance to the instant Motion, the Government states that "Trooper McVey told Walker to report the incident [involving Jenica Mullarkey], as well as the assault by defendant, to the Cedar Rapids Police Department who would have jurisdiction over the offense." (*See* docket number 23-2 at 9.) The Court concludes, however, that the testimony of Trooper McVey in this regard is credible and should be given more weight than the statement of Desiree Walker nearly one year later or the representations made by Government's counsel.

[5] At the time of hearing, the Government offered a "Clearance Report" by Detective George Aboud of the Cedar Rapids Police Department, dated July 4, 2005. (*See* Government's Exhibit 2.) The Clearance Report refers to the "date of original report" as 6-21-05, but the original report was not offered by either party at the instant hearing. A "supplemental report" regarding the incident, dated June 21, 2005, was attached to Defendant's Brief (docket number 16-2) and identified as Defendant's Exhibit B.

[6] Special Agent Brugman testified the meeting took place on June 21, 2005, while Trooper McVey testified the meeting took place on June 20, 2005.

[7] *See* fn. 4.

4

indicating that Faeth was afraid to go through with the controlled buy. Sgt. Hall testified that Faeth came to him that day and reported that the "task force" wanted her to introduce an undercover officer to a dealer, but she was afraid that the officer would be recognized. During their meeting at the Sheriff's Office, Faeth told Sgt. Hall about a safe at Defendant's residence containing drugs, money, and jewels. Sgt. Hall's report regarding that meeting and the subsequent search of Defendant's residence was admitted into evidence as Defendant's Exhibit F.

Sgt. Hall testified that Heather Faeth had acted as an informant for the Sheriff's Office since February 2005. Faeth provided information for two prior search warrants, one at the Roosevelt Hotel and one for a meth lab on 11th Street NE in Cedar Rapids. In addition, Faeth made controlled buys for law enforcement officers, including the DEA drug task force. According to Sgt. Hall, Faeth's information was accurate and reliable in the past and he had no reason to disbelieve the information she was providing regarding Defendant.

At the instant hearing, Defendant offered a copy of the search warrant and return obtained by Sgt. Hall for a search of Leonard Landt's apartment at the Roosevelt Hotel on February 24, 2005. (*See* Defendant's Exhibit G.) The application was supported by information provided by Heather Faeth. Defendant notes that the search yielded only suspected drug residue. Sgt. Hall explained, however, that Landt always carried his drugs and money on his person and he was not present at the apartment during the search.

Defendant also elicited testimony from Sgt. Hall that while four persons were arrested during the search of the meth lab on 11th Street NE, only two of those persons were prosecuted. Sgt. Hall testified that the other two persons were arrested for child endangerment and the county attorney subsequently decided to proceed "administratively," rather than pursue criminal charges.

On June 30, 2005 (the day she was meeting with Sgt. Hall), Heather Faeth was charged by Trial Information in state court with three counts: unlawful possession of

5

prescription drugs (Xanax), driving while under suspension, and possession of drug paraphernalia (hypodermic needles).[8] (*See* Defendant's Exhibit D.) According to the Trial Information, the offenses occurred on June 5, 2005. On August 3, 2005, the charges against Faeth were dismissed. (*See* Defendant's Exhibit E.) Sgt. Hall admitted interceding with the assistant county attorney on Faeth's behalf. According to Sgt. Hall, his request for consideration was related to Faeth's earlier service in the meth lab search. Sgt. Hall denied that Faeth had ever been paid monetary compensation for information, but conceded that after she provided information regarding a prostitute in March 2005, money from the Sheriff's Office was used to purchase a cell phone for Faeth and refill a prescription.[9]

## V. SEARCH WARRANT APPLICATION

As set forth above, the search warrant application was supported by "Attachment A" and "Attachment B." Attachment A informed the issuing magistrate that on June 30, 2005, Sgt. Hall made contact with "informant 05-141-01," whom Hall identified at the instant hearing as Heather Faeth. The informant told Hall that "[a] large metal safe that would have in it a large sum of money, a large quantity of cocaine, and diamonds" could be found at 3737 Oakland Rd NE. The informant also stated that "additional smaller quantities of cocaine, and other drug paraphernalia" could be found in the residence. The informant asserted that "[t]he individual at this residence was a Brook and that he was trafficking cocaine in larger quantities."

Sgt. Hall advised the issuing magistrate in Attachment A that he was familiar with 3737 Oakland Rd NE in Cedar Rapids as the home of Brook Walton. The magistrate was told that Walton "has a long record of crimes," as enumerated in Attachment A.

Attachment A further advised the issuing magistrate that Sgt. Hall met with Trooper Mike McVey on June 27, 2005, and was told that McVey had interviewed another

---

[8]The Trial Information was approved by the Court on June 30, 2005, but not filed with the Clerk of Court until July 1, 2005.

[9]Heather Faeth died of a drug overdose in August 2005.

6

informant during the week of June 19, 2005 to June 25, 2005. According to Attachment A, that informant met with Trooper McVey and Agent Greg Brugman of the Iowa DNE, and described a gun safe at the residence of Brook Walton at 3737 Oakland Rd NE, which "would contain drugs (cocaine in large quantities), money and jewelry." The issuing magistrate was advised that "[t]his informant was not a tested informant." Attachment A noted, however, that the information provided by the two informants was substantially the same.

The issuing magistrate was further advised in Attachment A that informant 05-141-01 (Faeth) "has been used on several prior search warrants in the recent past (for the Linn County Sheriff's Office) and those warrants have been successful in locating narcotics, drug paraphernalia and monies." The magistrate was also advised that Walton had been in prison for prior drug trafficking and was "currently under Federal Parole Supervision."

Attachment B, consisting of two pages, included a checklist on the first page and a short narrative on the second page. Referring to "CI# LCSO 05-141-01," the magistrate was advised that the informant "has no motivation to falsify the information" and "has otherwise demonstrated truthfulness." The magistrate was further advised that the informant had supplied information in the past on four occasions, which had helped supply the basis for two search warrants and had led to the making of four arrests. The magistrate was further advised:

> Informant 05-141-01 has been at the 3737 Oakland Rd address and has seen the cocaine, drug paraphernalia, monies and diamonds at the residence. The Informant has been [sic] provided information in the past and that information has been found to be correct in all aspects with the exceptions of the amounts of drugs present. Informant has been paid for part of past information provided to the Linn County Sheriff's Office. Informant has not been for all information that has been provided. I have known the informant for approximately 4 months.

7

As set forth above, the copy of Attachment B which was introduced at the instant hearing as part of Government's Exhibit 1 was not signed.

## VI. ANALYSIS

In his instant Motion to Suppress Evidence, Defendant claims that Sgt. Hall "intentionally, or with reckless disregard of the truth, presented false information in the affidavit for the search warrant, and the evidence seized on the basis of the warrant should be suppressed." Specifically, Defendant argues that Attachment B falsely asserted (1) that the informant had no motivation to falsify the information, (2) the informant had supplied information in the past on four occasions, (3) the informant's past information led to the making of four arrests, and (4) the informant had not given false information in the past. Furthermore, Defendant argues that material omissions from the Application for Search Warrant included (1) the circumstances surrounding the relationship between Defendant and Desiree Walker, and (2) that Heather Faeth had refused to attempt a controlled buy from Defendant.

The seminal case in this regard is *Franks v. Delaware*, 438 U.S. 154 (1978). There, the United States Supreme Court concluded that if it is shown following a hearing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the false statement is necessary to the finding of probable cause, then the search warrant must be voided and the fruits of the search excluded. *Id.* at 155-56. The same principle applies if material information is omitted from the application. *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004) ("Omissions likewise can vitiate a warrant if the defendant proves 'first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'") (quoting *United States v. Allen*, 297 F.3d 790, 795 (8th Cir. 2002)).

8

The standard to be applied in a *Franks* case was summarized recently by the Eighth Circuit Court of Appeals as follows:

> To prevail on a *Franks* claim, a defendant must show that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included false information in or excluded material information from the search warrant affidavit; and (2) the affidavit, excluding the false inclusion or including the missing material information, would not support a finding of probable cause. (citation omitted) Neither mere negligence nor an innocent mistake will, by themselves, void a warrant.

*United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006). Accordingly, the Court must determine whether Sgt. Hall intentionally, or with reckless disregard for the truth, included false information in the search warrant application or excluded material information from the application. If the first prong in the *Franks* test is met, then the Court must determine whether probable cause for the warrant would nonetheless exist after excluding the false information or including the omitted information.

### A. *False statements and omitted information.*

In order to sustain his burden of proof on the first prong in *Franks*, Defendant must establish by a preponderance of the evidence that there are false statements in the search warrant application and supporting attachments, or that there are material omissions from the same. *United States v. Stropes*, 387 F.3d 766, 771 (8th Cir. 2004). To prevail on a *Franks* claim based on omissions of fact, a defendant must prove "'that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading. . . .'" *Id.* (quoting *United States v. Allen*, 297 F.3d 790, 795 (8th Cir. 2002)).

Turning to the facts in the instant action, Defendant first argues that Attachment B falsely stated that the informant "has no motivation to falsify the information." Apparently, Defendant believes that in providing information for the search warrant, Faeth was motivated by the state charges which were filed at the same time as the search

9

warrant.[10] There is no evidence, however, to sustain that belief. Sgt. Hall testified that his efforts on Faeth's behalf regarding the state charges were related to her earlier service in obtaining a search warrant for a meth lab on 11th Street in Cedar Rapids. Sgt. Hall denied that Faeth received any consideration for the information which she provided regarding Defendant.

Next, Defendant argues that the testimony established that Faeth has supplied information on six occasions in the past, rather than the four times identified by Sgt. Hall in Attachment B. Sgt. Hall explained that the four times referenced in the Attachment represent dealings which he had directly with Heather Faeth. In addition, Faeth had provided information to other law enforcement agencies on two occasions. Sgt. Hall did not include those instances since he was not a party to them. To the extent the assertion may be inaccurate, the Court concludes that it is not a material misrepresentation, *United States v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005), and was an innocent mistake. *Davis*, 471 F.3d at 946.

Similarly, Defendant argues that Sgt. Hall's assertion that Faeth's past information had led to the making of four arrests was misleading, since only two of the persons arrested were charged. Sgt. Hall testified that the child endangerment charges against the other two arrested individuals were handled "administratively," and the county attorney decided not to pursue criminal charges. The Court concludes that the assertion by Sgt. Hall regarding the number of arrests was neither false, nor was it materially misleading.

Defendant argues that Faeth had given "false information in the past," notwithstanding the allegation in Attachment B. In support of his argument, Defendant cites the modest results of the search warrant executed at Leonard Landt's apartment in the

---

[10]As noted in Part IV above, the Trial Information was signed on the same day that Faeth met with Sgt. Hall. The Trial Information was filed with the Clerk of Court on the following day, which is the same day that Sgt. Hall obtained the search warrant.

10

Roosevelt Hotel. Sgt. Hall noted, however, that Attachment A to the Landt search warrant specifically indicated that the informant had observed methamphetamine and large sums of money "in LANDT'S possession." (*See* Defendant's Exhibit G.) Defendant failed to establish that Faeth had provided false information in the past. The Court concludes that the assertion made by Sgt. Hall in the instant action is accurate.

In addition to the allegedly false statements, Defendant argues that Sgt. Hall omitted material information from the Application by failing to inform the issuing magistrate of the circumstances regarding the relationship between Desiree Walker and Defendant. Specifically, Defendant argues that the Application should have disclosed that Defendant had previously assaulted Walker. There is no evidence, however, that any of the officers were aware of that allegation prior to applying for the search warrant. Trooper McVey and Special Agent Brugman testified that while Walker described an assault by Jenica Mullarkey, she never disclosed an assault by Defendant.

Finally, Defendant suggests that the magistrate should have been informed that Faeth had refused to attempt a controlled buy from Defendant. Even assuming the materiality of that fact, Defendant offers no evidence to suggest that the omission was intended to make the Affidavit misleading, or was in reckless disregard of whether the omission made the Affidavit misleading. *Allen*, 297 F.3d at 795.

In summary, the Court concludes that none of the affirmative assertions set forth in the attachments to the Application for Search Warrant are false, nor do the attachments omit material information. Even if one concludes that the attachments were false or misleading, however, there is no evidence that the misstatements were made knowingly and intentionally, or with reckless disregard for the truth. Mere negligence or innocent mistake are insufficient. *Franks*, 438 U.S. at 171.

### B. *Probable Cause.*

As set forth above, the Court has concluded that Defendant failed to prove by a preponderance of the evidence that Sgt. Hall knowingly and intentionally, or with reckless

11

disregard for the truth, included false information in or excluded material information from the search warrant affidavit. Accordingly, the first prong of *Franks* has not been met and it is unnecessary to consider the second prong. Nonetheless, to assist the District Court in the event the Court finds that the first prong of *Franks* has been satisfied, the Court will also address the second prong relating to probable cause.

In order to justify suppression of the evidence, the Court must determine that the affidavit, excluding the false information or including the missing material information, would not support a finding of probable cause. *Davis*, 471 F.3d at 946. In other words, Defendant must establish that if the false information were excluded, then probable cause would not exist; or if the material omissions were included, then it would have been impossible to find probable cause. *Stropes*, 387 F.3d at 771 (citing *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).

According to Defendant's argument, the issuing magistrate should have been told about the impending charges against Faeth, that Faeth had supplied information on six prior occasions (rather than four), and that the four arrests made, based in part on information supplied by Faeth, resulted in only two persons being charged. In addition, Defendant would have the magistrate informed that the information relating to the search warrant at the Roosevelt Hotel resulted in the seizure of only drug residue. Also, Defendant believes the magistrate should have been told that Defendant had previously assaulted Desiree Walker (although that information was unknown to law enforcement at that time) and that Heather Faeth had refused to attempt a controlled buy from Defendant.

With those modifications, the magistrate would have been advised that Heather Faeth provided information to law enforcement officers on additional prior occasions and that the county attorney had elected not to pursue charges against two of the persons arrested. The magistrate would have been told that Faeth reported Leonard Landt carrying large amounts of drugs and money, but that since he was not found in his apartment at the time of the search, only residue of drugs was located. In addition, the magistrate would

12

Case 1:07-cr-00014-LRR   Document 49   Filed 07/09/07   Page 12 of 14

have been told that Faeth had recently been arrested on state charges, although there is no indication that a "deal" had been reached regarding resolution of those charges in exchange for information against the Defendant.

The changes advocated by Defendant all go to the credibility of the informants. That is, none of the changes relate to the substantive information provided to the magistrate regarding the probability that evidence of Defendant's criminal activity could be found at his residence. The Court believes that even with the changes advocated by Defendant, the issuing magistrate could nonetheless conclude that probable cause existed for the issuance of a warrant. "Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." *Davis*, 471 F.3d at 946 (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). In this case, two independent informants provided nearly identical information at about the same time. Even with the changes to the Application urged by Defendant, the magistrate could conclude that the information was credible and probable cause existed for the issuance of a search warrant.

## VII. SUMMARY

In summary, the Court concludes that Defendant has failed to meet his burden of proving by a preponderance of the evidence that the Application for Search Warrant and attachments contain false information. Similarly, the evidence does not support a finding that material information was excluded from the search warrant application and attachments. Even if one concludes that the Application and supporting attachments misrepresented the truth, however, there is no evidence that Sgt. Hall acted knowingly and intentionally, or with reckless disregard for the truth, in attempting to mislead the magistrate. Mere negligence or innocent mistake is not enough. Finally, the objections made by Defendant go to the credibility of the informants and not to the substantive facts underlying the Application for Search Warrant. Even with the proposed changes, the
13

Court believes that the issuing magistrate could find the informants credible and the allegations supportive of probable cause. Therefore, the Court believes that the Motion to Suppress should be denied.

## VIII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **DENY** Defendant's Motion to Suppress Evidence (docket number 16).

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendation, any party may serve and file written objections with the District Court.

DATED this 9th day of July, 2007.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA